UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
               :

IN RE LAWRENCE KASSOVER     :

               :
------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 9366 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

R. Peyton Gibson appeals the October 27, 2010 Order[1] ("October Order") of Honorable Burton R. Lifland, United States Bankruptcy Judge, denying Gibson's motion for an order to reopen the bankruptcy case.  For the reasons set forth below, the October Order is affirmed.

## II.  BACKGROUND

### A.  The Bankruptcy Proceedings

On May 1, 1998, Lawrence Kassover (the "Debtor") filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code.[2]  The following month, the Bankruptcy Court approved R. Peyton Gibson's appointment

---

[1]  *See* 10/27/10 Bench Memorandum Decision and Order Denying Former Liquidating Trustee's Motion For an Order To Reopen Case ("October Order"), Ex. 2 of the Record on Appeal ("Record").

[2]  *See id.* at 2.

1

as Chapter 11 Trustee.[3]  In June of 2000, the Bankruptcy Court issued an order (the "Confirmation Order") confirming Gibson's First Amended Plan of Reorganization (the "Plan").[4]  The Plan called for the liquidation of the Debtor's assets through a liquidating trust and for Gibson to act as liquidating trustee.[5]  The Confirmation Order provided the following provision retaining post-confirmation jurisdiction:

> Pursuant to, *inter alia*, Bankruptcy Code section 150(a) and Bankruptcy Rule 3020(d), and until the termination of the Liquidating Trust, the Bankruptcy Court shall retain jurisdiction over all matters arising out of or relating to the Chapter 11 case . . . .[6]

Additionally, the Confirmation Order released the liquidating trustee from liability:

> [N]otwithstanding any other provision of the Plan, neither the Trustee, the Liquidating Trustee or the Debtor, nor their respective agents, representatives or professionals including attorneys, shall have any liability for actions taken or omitted to be taken under or in connection with the Plan, or in connection with the Chapter 11 Case or the operation or administration of the Estate during the Chapter 11 Case, except for conduct constituting gross negligence,

---

[3]  *See* 6/16/98 Order Approving the Appointment of Chapter 11 Trustee, Ex. 8 of the Record.

[4]  *See* 6/14/00 Order Confirming Chapter 11 Trustee's First Amended Plan of Reorganization ("Confirmation Order"), Ex. 9 of the Record.

[5]  *See* Trustee's First Amended Plan of Reorganization for Lawrence Kassover ("Plan"), Ex. 10 of the Record, § 7.1.

[6]  Confirmation Order ¶ 90.

willful misconduct or non-negligent breach of fiduciary duty.[7]

Both the Plan and the Final Decree contain similar release provisions.[8]

At the time of the filing, the Debtor owned two principal assets — an undivided one-quarter interest in various real property and, of relevance here, a 5.66% interest in The Garden City Company, Inc. ("GCC").[9] GCC was a closely-held corporation controlled primarily by members of the Debtor's extended family including the Debtor's cousin, and party to this action, Philip Kassover ("Philip").[10] The Plan required Gibson to "marshal, liquidate, and distribute" the Debtor's shares in GCC.[11] In order to maximize the value of the Debtor's shares, the Plan authorized Gibson to pursue the disposition of GCC, as a whole, subject to the approval of the GCC shareholders and the Bankruptcy Court.[12]

---

[7]     *Id.* ¶ 75.

[8]     *See* Plan § 10.2; Final Decree, Ex. 14 of the Record, at 3.

[9]     *See* Order Approving a Settlement and Stock Purchase Agreement and an Agreement and Plan of Merger ("Merger Order"), Ex. 13 of the Record, at 2.

[10]     Members of the Kassover family have been almost continuously involved in litigation concerning various governance disputes with respect to GCC for the past twenty years and it was this litigation that contributed in part to Lawrence Kassover's 1998 bankruptcy filing. *See In re Kassover*, 336 B.R. 74, 76 (Bankr. S.D.N.Y. 2006).

[11]     Plan at 10.

[12]     *See id.* at 19.

3

In July of 2002, both the Bankruptcy Court and a majority of the GCC shareholders[13] approved a merger (the "Merger Agreement") between GCC and Prism Venture Partners, LLC ("Prism").[14]  Prism agreed to pay $2,000 per share to each GCC shareholder in order to effectuate the merger (the "Merger Consideration").[15]  The Merger Agreement provided for Gibson to act as the Disbursing Agent responsible for holding the Merger Consideration in trust.[16]  It further authorized Gibson to distribute the Merger Consideration to the former shareholders upon the production of certain documentation and the satisfaction of all monetary obligations owed by each shareholder to GCC.[17]  The merger was consummated on August 23, 2002, and the surviving corporation was named

---

[13]     Philip Kassover was the sole objector to the merger agreement.  In 2001, after Gibson commenced an adversary proceeding alleging interference by Philip with her efforts to dispose of GCC, the Bankruptcy Court enjoined Philip from "[t]aking any action that interferes with or obstructs the Trustee's implementation of the Plan . . . and her exclusive right to market and sell Garden City . . . ."  *See Gibson v. Kassover*, No. 98-43124, slip op. at 14 (Bankr. S.D.N.Y. Nov. 30, 2001), Ex. 16 of the Record.

[14]     *See* Merger Order.

[15]     *See* Agreement and Plan of Merger ("Merger Agreement"), Ex. 17 of the Record, § 2.4(b).

[16]     *See id.* § 3.2.

[17]     *See id.*

4

Garden City.[18]

## B.     The State Court Action

As Disbursing Agent, Gibson disbursed the full Merger Consideration to each of the former shareholders for their shares in GCC with the exception of Philip Kassover, Ruth Kassover (the "Kassovers") and the Estate of Nathan Kassover (the "Nathan Kassover Estate").[19]   Allegedly, in June of 2003, Garden City instructed Gibson to withhold the Merger Consideration owed the Kassovers and the Nathan Kassover Estate due to both their failure to provide certain documentation and their outstanding monetary obligations owed to Garden City.[20] Several months later, Gibson distributed $322 per share to the Nathan Kassover Estate and $169 per share to Philip.[21]   In July of 2005, the Kassovers, in their individual capacity and as executors of the Nathan Kassover Estate, filed suit in New York state court against Prism, Garden City, Gibson and the other shareholders alleging twelve state law claims.[22]   Among these, were two claims

---

[18]     *See In re Kassover*, 336 B.R. at 77.

[19]     *See id.*

[20]     *See id.* at 77-78.

[21]     *See Kassover v. Prism Venture Partners, LLC*, 53 A.D.3d 444, 447 (1st Dep't 2008).

[22]     *See id.*

brought against Gibson for breach of contract and breach of fiduciary duty in both her representative and personal capacity for her failure to disburse the full Merger Consideration.[23]

In August of 2005, Gibson removed the action to federal court where it was referred to the Bankruptcy Court.[24] The Kassovers subsequently moved to remand the action to state court.[25] The Bankruptcy Court held that the state claims lacked a close nexus to the bankruptcy proceeding and that the Bankruptcy Court had not retained post-confirmation subject matter jurisdiction over the dispute.[26] The Bankruptcy Court further noted that the Kassovers were suing Gibson in her role as Disbursing Agent — rather than in her role as liquidating trustee — and any liability incurred as Disbursing Agent would have no effect on the Debtor's estate or the liquidating trust.[27] The Bankruptcy Court remanded the action to New York

---

[23]     *See id.*

[24]     *See In re Kassover*, 336 B.R. at 78.

[25]     *See id.*

[26]     *See id.* at 79-80.

[27]     *See id.* at 80 ("Moreover, Gibson, is being sued, not in her roles as chapter 11 trustee or Liquidating Trustee but rather in her role as Disbursing Agent, a role she took on after the Plan was confirmed and for which she was apparently compensated (or will be) by third parties.").

state court on January 12, 2006 (the "Remand Decision").[28]

Upon remand, Gibson moved to dismiss the claims and asserted various affirmative defenses and counterclaims alleging that the Kassovers were not entitled to the Merger Consideration for failing to satisfy the preconditions established in the Merger Agreement.[29] On January 19, 2007, the Supreme Court of New York (Freedman, J.) denied Gibson's motion to dismiss the breach of contract claim but dismissed the breach of fiduciary duty claim.[30] On September 25, 2007, the court dismissed all of Gibson's counterclaims.[31] The Appellate Division, First Department affirmed both these rulings on July 22, 2008.[32]

On July 2, 2008, the Supreme Court of New York (Freedman, J.)

---

[28]    *See id.*

[29]    *See Prism Venture Partners, LLC*, 53 A.D.3d at 450.

[30]    *See id.* at 448.

[31]    *See id.* In September of 2007, Gibson also sought leave to amend her complaint in the ongoing adversary proceeding against Philip in the Bankruptcy Court in order to obtain a declaration that she was not liable for her actions as Disbursing Agent and an order staying the state court action. The Bankruptcy Court denied her requests on essentially the same grounds as it provided in the Remand Decision, namely, that the Kassovers' state claims against Gibson were insufficiently related to the Debtor's bankruptcy proceeding. *See In re Kassover*, Bankr. No. 98-43124, 2007 WL 4276826, at *5 (Bankr. S.D.N.Y. Nov. 29, 2007) ("The relief requested could have significance for Garden City and for the Disbursing Agent, but it has no relevance to the Liquidating Trust or the Debtor's estate.").

[32]    *See Prism Venture Partners, LLC*, 53 A.D.3d at 444.

granted the Kassovers' motion for partial summary judgment on the breach of

contract claim against Gibson in her representative capacity but dismissed the

breach of contract claim against Gibson in her individual capacity.[33]  On June 9,

2009, the Supreme Court of New York (Kapnick, J.) entered judgment against

Gibson in the amount of $1,825,598.70.[34]  In May of 2010, the Appellate Division,

First Department upheld the judgment against Gibson, amended the amount, and

reinstated the breach of contract claim against her in her personal capacity.[35]  The

Court of Appeals denied Gibson leave to appeal on September 14, 2010 and the

single remaining breach of contract claim is currently proceeding to trial.[36]

### C.    Gibson's Motion to Re-Open the Bankruptcy Proceedings

On March 23, 2010, in response to a motion by Gibson, the

Bankruptcy Court signed a Final Decree[37] discharging Gibson as trustee and, on

---

[33]    *See Kassover v. Prism Venture Partners, LLC*, No. 602464/2005, slip op. (Sup. Ct. N.Y. Co. July 2, 2008).

[34]    *See Kassover v. PVP-GCC Holding Co. II, LLC*, 73 A.D.3d 626, 627 (1st Dep't 2010).

[35]    *See id.*

[36]    *See* Response Brief of Appellees in Opposition to Gibson's Appeal at 7.

[37]    *See* Final Decree at 3.

August 6, 2010, closed the bankruptcy proceeding.[38]  Less than two weeks later, on

August 19, 2010, Gibson moved the Bankruptcy Court to reopen the proceedings

pursuant to section 350 of the Bankruptcy Code.[39]  Gibson requested the reopening

in order to thereafter seek a ruling enforcing the release provisions of the Plan,

Confirmation Order and Final Decree.[40]  Gibson contends that the release

provisions in the Plan, Confirmation Order and Final Decree pertaining to her role

as Trustee and Liquidating Trustee apply equally to her role as Disbursing Agent

pursuant to the Merger Agreement and, therefore, immunize her from the currently

pending state court action.[41]

On October 27, 2010, after full briefing and a hearing, the Bankruptcy

Court (Liflind, J.) denied Gibson's motion in its entirety.[42]  In so doing, the

Bankruptcy Court held that reopening was inappropriate because both it and the

state court had repeatedly ruled that "Gibson's role as Disbursing Agent was

---

[38]     *See* October Order at 6.

[39]     *See* Former Liquidating Trustee's Motion for an Order to Reopen
Case, Ex. 4 of the Record; 11 U.S.C. § 350(b).

[40]     *See* October Order at 7.

[41]     Brief of Appellant, R. Peyton Gibson, Former Chapter 11 and
Liquidating Trustee, at 23.

[42]     *See id.*

separate and apart from her role as Liquidating Trustee."[43]  The Bankruptcy Court

concluded that it had "no subject matter jurisdiction over the issue of whether

Gibson can be held personally liable for her role as Disbursing Agent, which is

before the State Court in an action that was remanded . . . in 2006."[44]  Gibson now

appeals the decision to this Court.

## III.   LEGAL STANDARDS

### A.   Appeals of Final Bankruptcy Court Orders

The district courts are vested with appellate jurisdiction over

bankruptcy court rulings.[45]  Final orders of the bankruptcy court may be appealed

to the district court as of right.[46]  An order is final if "[n]othing in the order . . .

indicates any anticipation that the decision will be reconsidered."[47]

### B.   Standard of Review

A district court functions as an appellate court in reviewing judgments

---

[43]     *Id.* at 8.

[44]     *Id.* at 9.

[45]     *See* 28 U.S.C. § 158(a).

[46]     *See id.* § 158(a)(1).

[47]     *In re 114 Tenth Ave. Ass'n, Inc.*, 441 B.R. 416, 424 (S.D.N.Y. 2010)
(quoting *In re Palm Coast, Matanza Shores Ltd. P'ship*, 101 F.3d 253, 256 (2d Cir.
1996)).

rendered by bankruptcy courts.[48]  Decisions by a bankruptcy court granting or

denying a motion to reopen bankruptcy proceedings "invoke the exercise of . . .

equitable powers, which is dependent upon the facts and circumstances of each

case."[49]  For this reason, the decision to reopen bankruptcy proceedings is

committed to the sound discretion of the bankruptcy court and such decisions are

overturned only upon a finding that the bankruptcy court abused its discretion.[50]

"A bankruptcy court abuses its discretion if it bases its decision on an erroneous

view of the law or clearly erroneous factual findings."[51]  Thus, findings of fact are

reviewed for clear error[52] whereas findings that involve questions of law, or mixed

---

[48]     *See In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993).

[49]     *State Bank of India v. Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996).

[50]     *See International Asset Recovery Corp. v. Thomson McKinnon Secs.*, 335 B.R. 520, 525 (S.D.N.Y. 2005) ("The exercise of the bankruptcy court's equity powers, such as a decision to reopen a closed case, should be overturned only upon a showing that the decision was an abuse of discretion.").

[51]     *In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).

[52]     *See* Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). *Accord In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir. 2003).

questions of fact and law, are reviewed de novo.[53]

### C.    Reopening Bankruptcy Proceedings

Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."[54] Section 350(b) of Title 11 of the United States Code, in turn, states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."[55]  Although the Code does not define "cause," it is appropriate for a bankruptcy court to consider the merits of the underlying claim when deciding whether or not to grant a motion to reopen the proceedings.[56]  Thus, where the underlying claim is certain to fail upon a reopening of the proceedings, a bankruptcy court may properly deny the motion.[57]  In

---

[53]    *See In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 52 (S.D.N.Y. 2003) (citing *In re United States Lines, Inc.*, 197 F.3d 631, 640-41 (2d Cir. 1999)).

[54]    Fed. R. Bankr. P. 5010.

[55]    11 U.S.C. § 350(b).

[56]    *See Chalasani*, 92 F.3d at 1307 ("[I]f the decision not to reopen was bottomed on a finding that the default judgment could not be set aside, such is a permissible basis to deny relief, because reopening in that event would be meaningless."); *Emmerling v. Batstone*, 223 B.R. 860, 865 (B.A.P. 2d Cir. 1997) ("The statutory 'cause' to reopen under section 350(b) in this case depends upon whether cause exists to vacate the default judgment, since that is the sole purpose of reopening the bankruptcy case.").

[57]    *See, e.g.*, *In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010) (affirming bankruptcy court's denial of a motion to reopen where debtor's contemplated

addition, courts ordinarily consider "the benefit to the debtor, the prejudice to the would-be defendant in the litigation, and the benefit to the creditors."[58]  Courts have also considered the amount of time the proceedings have been closed and the availability of relief in other fora.[59]

### D.   Subject Matter Jurisdiction

Bankruptcy courts may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."[60] However, where a matter is merely "related to" a case under title 11, it is considered a "non-core" proceeding and a bankruptcy court may only submit proposed findings of fact and conclusions of law that are subject to de novo review by the district courts.[61]  Claims arising under Title 11 are those "predicated on a

---

claims against trustee were found to be without merit).

[58]     *In re I. Appel Corp.*, 300 B.R. 564, 571 (S.D.N.Y. 2003).

[59]     *See, e.g., Mohorne v. Beal Bank, S.S.B.*, 419 B.R. 488 (S.D. Fla. 2009).

[60]     28 U.S.C. § 157(b)(1).

[61]     *Id.* § 157(c)(1); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 228-29 (2d Cir. 2002) ("'[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages.'") (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982)).

right created by a provision of title 11."[62]  Claims that arise in a case under Title 11 "involve proceedings that are not based on any right created by title 11, but nevertheless, would have no existence outside of the bankruptcy."[63]  A proceeding is merely "related to [a case] under Title 11" if the "outcome might have a 'conceivable effect' on the estate."[64]

While bankruptcy courts always retain the power to interpret and enforce their own orders,[65] courts agree that their jurisdiction narrows upon confirmation of a reorganization plan,[66] and narrows further upon closure of the proceedings.[67]  A party seeking post-confirmation relief must satisfy two additional requirements.  *First*, the party must establish that the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation,

---

[62]     *In re DPH Holdings Corp.*, 437 B.R. 88, 95 (S.D.N.Y. 2010) (quotation marks and citations omitted).

[63]     *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).

[64]     *In re General Media, Inc.*, 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)).

[65]     *See Travelers Indem. Co. v. Bailey*, – U.S. – , 129 S. Ct. 2195, 2205 (2009); *Baker*, 613 F.3d at 352.

[66]     *See In re General Growth Props., Inc.*, Bankr. No. 09-11977, 2011 WL 766129, at *5 (Bankr. S.D.N.Y. Feb. 25, 2011).

[67]     *See In re RJZM, LLC*, Bankr. No. 06-11535, 2009 WL 2929433, at*2 (Bankr. S.D.N.Y. July 28, 2009) ("[Post-confirmation jurisdiction] undoubtedly shrinks even further when a case has been closed.").

implementation, consummation, execution, or administration of the confirmed

plan."[68] *Second*, the party must show that the plan "provides for the retention of

jurisdiction over the dispute."[69]  Courts have found the requisite nexus where

adjudication of the post-confirmation dispute will affect the interests of creditors or

requires interpretation of the reorganization plan.[70]  However, where the case has

been fully administered and the interests of creditors will be unaffected by the

resolution of the dispute, bankruptcy courts have declined to exercise post-

confirmation subject matter jurisdiction.[71]

---

[68]     *In re DPH Holdings Corp.*, 437 B.R. at 97.

[69]     *Id.*

[70]     *See, e.g.*, *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 605 (S.D.N.Y. 2008) (holding that subject matter jurisdiction existed because resolution of issues "raised in these actions could impact the amount of interest that will be paid to the trust and made available to the creditors"); *Krys v. Sugrue*, No. 08 Civ. 3065, 2008 WL 4700920, at *6 (S.D.N.Y. Oct. 23, 2008) ("[A]ny funds recovered by the . . . Trust in this case will go directly to [the] largest creditors . . . thus further evidencing the 'close nexus' between the Trustee's claims and the bankruptcy proceeding."); *Guccione v. Bell*, No. 06 Civ. 492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006) ("This dispute . . . affects the interpretation of the plan, which is all that is necessary to satisfy the 'close nexus' requirement for jurisdiction.").

[71]     *See, e.g.*, *In re General Media, Inc.*, 335 B.R. at 75 ("Bankruptcy courts plainly lack jurisdiction over post-confirmation litigation where the case has been fully administered and all of the recovery will go to the reorganized debtor rather than to the creditors."); *Matter of Pan Am. Sch. of Travel Inc.*, 47 B.R. 242, 244-45 (Bankr. S.D.N.Y. 1985) (remanding post-confirmation debtor's request to stay proceedings against him for trademark infringement due to an insufficient relation to the core bankruptcy proceedings).

## IV.   DISCUSSION

### A.   Subject Matter Jurisdiction

In denying Gibson's motion to reopen, the Bankruptcy Court properly

considered the merits of Gibson's underlying claim.[72]  In so doing, the Bankruptcy

Court concluded that it did not have subject matter jurisdiction over the dispute.

Specifically, the Bankruptcy Court held that Gibson's actions as Disbursing Agent

were not covered by the release provisions in the Plan, Confirmation Order or Final

Decree because Gibson's role as Disbursing Agent was "separate and apart from

her duties as Trustee of [the] Chapter 11 estate."[73]  Thus, the question of Gibson's

liability arising from her role as Disbursing Agent was only tangentially related to

---

[72]   Gibson argues that the Bankruptcy Court's consideration of the underlying claim amounted to a denial of due process because, in her initial motion to reopen, she did not fully argue the merits of her contemplated motion requesting an order enforcing the release provisions. However, even a cursory exploration of the relevant case law would have informed Gibson that courts routinely and properly examine the merits of the underlying claims when deciding motions to reopen. *See, e.g., Chalasani*, 92 F.3d 1300; *In re Smith*, 426 B.R. 435; *In re Mortensen*, No. 8-10-75234, – B.R. –, 2011 WL 165846, at *2 (Bkrtcy. E.D.N.Y. Jan. 19, 2011); *In re Clark*, No. 8-10-73746, 2010 WL 5348721, at *3 (Bankr. E.D.N.Y. Dec. 21, 2010) ("A] case should not be reopened if the ultimate relief the movant seeks is inappropriate."); *In re Cruz*, 254 B.R. 801, 804-05 (Bankr. S.D.N.Y. June 21, 2000) (examining underlying claim prior to determining if cause exists to reopen under section 350(b)). Thus, the fact that the court did so here does not constitute a denial of due process simply because Gibson failed to fully brief the issue.

[73]   October Order at 8.

16

the now-closed bankruptcy proceedings and, therefore, more appropriately adjudicated in state court.[74]

Gibson disagrees. She notes that the Plan authorized her, as Liquidating Trustee, to dispose of GCC in order to maximize the value of Lawrence Kassover's shares.[75] Because she disposed of GCC through a court-approved merger, Gibson argues, she took on the responsibility for disbursing the Merger Consideration pursuant to her role as Liquidating Trustee.[76] Thus, the release provisions also cover her actions as Disbursing Agent and the Bankruptcy Court retains jurisdiction to enforce those provisions.

Despite Gibson's attempt to conflate her two roles, I conclude that the Bankruptcy Court properly construed its own subject matter jurisdiction. The relief sought lacks a "close nexus" to the bankruptcy case, as required to establish the court's narrow post-confirmation jurisdiction.[77] Gibson does not dispute that the sought-after ruling would have no effect whatsoever on the administration of the estate or upon the interests of either the creditors or the Debtor. Philip seeks

---

[74]    *See id.* at 9.

[75]    *See* Brief of Appellant at 23.

[76]    *See id.*

[77]    *In re DPH Holdings Corp.*, 437 B.R. at 97.

17

the Merger Consideration from Gibson, not as a creditor of the estate, but as a GCC shareholder.[78] Furthermore, the Debtor has been deceased for several years,[79] the Plan was confirmed over ten years ago, there are no remaining creditors and the proceedings are now closed.   Thus, resolution of the dispute does not require the implementation, consummation, execution or administration of the Plan.

Neither do Gibson's claims require the interpretation or enforcement of the Bankruptcy Court's prior orders, as those orders have been construed by the Bankruptcy Court.  Gibson argues that she merely seeks to have the Bankruptcy Court interpret and enforce the particular release provisions of the Plan, Confirmation Order and Final Decree — a power for which the court always retains jurisdiction.[80]  However, the Bankruptcy Court — both in the October Order and in the Remand Decision — specifically held that Gibson's role as Liquidating Trustee and as Disbursing Agent were independent of one another and that the provisions do not release Gibson from liability she incurred as Disbursing

---

[78]     As Judge Lifland noted in the Remand Decision: "As Disbursing Agent, Gibson was disbursing the proceeds of the GCC sale not the proceeds of the Debtor's estate." *In re Kassover*, 336 B.R. at 80.

[79]     *See id.*

[80]     *See Baker*, 613 F.3d at 352.

Agent.[81]

        Gibson points to no evidence that suggests the Bankruptcy Court's conclusion is clearly erroneous.  The release provisions in the Plan, Confirmation Order and Final Decree only exempt the bankruptcy trustee, the liquidating trustee, the Debtor and their respective agents from liability arising out of the Chapter 11 case.[82]  Contrary to Gibson's assertion,[83] her obligations as Disbursing Agent were not inherent in her duties as Liquidating Trustee.  Although the Plan did not prohibit her from taking on the additional role, it was not required or necessary for Gibson to personally disburse the Merger Consideration in order for her to fulfill her obligations as Liquidating Trustee under the Plan.

        Furthermore, neither the Plan, Confirmation Order or the Bankruptcy Court itself compelled Gibson to act as Disbursing Agent.[84]  While her actions as Disbursing Agent may have indirectly benefitted the Liquidating Trust and the

---

[81]    *See* October Order at 9 ("Gibson's actions performed in her capacity as Disbursing Agent were separate from her role as Liquidating Trustee."); *In re Kassover*, 336 B.R. at 80.

[82]    *See, e.g.*, Confirmation Order ¶ 75.

[83]    *See* Brief for Appellant at 23 ("The need for the Liquidating Trustee to receive and disburse the Garden City sales proceeds . . . was also inherent in the Bankruptcy Court's Confirmation Order.").

[84]    *See In re Kassover*, 336 B.R. at 77, n.6 ("Neither the Plan nor this Court directed Gibson to serve as Disbursing Agent . . . .").

19

estate, she was acting on behalf of the GCC shareholders — not the estate — when she distributed the Merger Consideration.[85]  For these reasons, the Bankruptcy Court's conclusion that Gibson's actions as Disbursing Agent "were separate and apart" from her actions as Liquidating Trustee was not clearly erroneous. Accordingly, Gibson's claim lacks a "close nexus" to the bankruptcy proceedings and the Bankruptcy Court correctly concluded that it lacked post-confirmation subject matter jurisdiction.[86]

### B.    Reopening Bankruptcy Proceedings

Because the Bankruptcy Court correctly concluded that it lacked post-confirmation subject matter jurisdiction over the dispute, Gibson's underlying claim is certain to fail upon reopening.  Thus, the Bankruptcy Court's decision to deny Gibson's motion to reopen the proceedings was not made in error. Nonetheless, Gibson contends that the denial "is extremely prejudicial" to her whereas re-opening the proceedings would not result in "any meaningful prejudice" to Philip.[87]  However, prejudice to the parties is not the only factor

---

[85]     *See id.*

[86]     Because Gibson's claim lacks a "close nexus" to the bankruptcy proceedings, this Court need not reach the second prong of the post-confirmation jurisdiction analysis.

[87]     Brief of Appellant at 15.

considered upon a motion to reopen. The Bankruptcy Court must also consider the benefit to the debtor and to the creditors.[88] Here, because the estate has been fully administered and the Debtor is deceased, there would be no such benefits.

Furthermore, Gibson's claim that the refusal to reopen the proceedings will prejudice her is doubtful. Gibson has twice previously argued that her actions as Disbursing Agent were performed on behalf of the Lawrence Kassover estate. On each occasion, the court has rejected the very same arguments she intends to present now.[89] Because she has had prior opportunities to make similar arguments to those she now seeks to assert, Gibson is not prejudiced by the Bankruptcy Court's refusal to entertain her third attempt.

## V.    CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. The Clerk of the Court is directed to close this appeal.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

---

[88]    *See In re I. Appel Corp.*, 300 B.R. at 571.

[89]    *See In re Kassover*, 336 B.R. at 80; *Kassover v. PVP-GCC Holding Co. II, LLC*, 73 A.D.3d at 629.

Dated:      New York, New York
            April 4, 2011

## -Appearances-

**For R. Peyton Gibson:**

Charles Everett Simpson, Esq.
Delton Lee Vandever, Esq.
Windels, Marx, Lane & Mittendorf LLP
156 West 56th Street
New York, NY 10019
Phone: (212) 237-1070
      (212) 237-1116

**For Philip Kassover and Ruth Kassover:**

Edward A. Friedman, Esq.
Kent Kari Anker, Esq.
Friedman, Kaplan, Seiler & Adelman LLP
1633 Broadway
New York, NY 10019
Phone: (212) 833-1102
      (212) 833-1244